Case No.  12-1445

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

ANDY KERR, Colorado State
Representative, *et al.*

>        Plaintiffs-Appellees,

>   v.

JOHN HICKENLOOPER, Governor of
Colorado, in his official capacity,

>        Defendant-Appellant.

On Appeal from
The United States District Court For the District of Colorado
D.C. No. 11-cv-01350-WJM-BNB
Hon. William J. Martinez, United States District Judge

---

**Governor's Petition for Rehearing En Banc**

---

JOHN W. SUTHERS
Attorney General

*s/ Daniel D. Domenico*

---

DANIEL D. DOMENICO
  Solicitor General
MICHAEL L. FRANCISCO
  Assistant Solicitor General
BERNIE BUESCHER
  Deputy Attorney General
MEGAN PARIS RUNDLET
  Assistant Attorney General
Office of the Colo. Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6000

*Attorneys for Defendant-Appellant*
*John Hickenlooper, Governor of the State of*
*Colorado*

# TABLE OF CONTENTS

**PAGE**

RULE 35 STATEMENT ..........................................................................1

BACKGROUND ....................................................................................2

REASONS FOR REHEARING EN BANC...............................................4

   I.   Legislator-Standing: The panel has created "a drastic extension" of legislative standing that the Supreme Court has said is a step it is "unwilling to take." ....................................................................................................4

   II.  Justiciability: By holding that attacks on direct democracy under the Guarantee Clause are justiciable, the panel has gone at least two steps beyond what any other Court, including the Supreme Court and this Court, have held.....8

     A.  The Supreme Court has not overruled the longstanding "general rule" that the Guarantee Clause is nonjusticiable................................................9

     B.  Even if some Guarantee Clause claims are justiciable, claims about the proper balance between direct and representative democracy are not. .............11

     C.  The panel misapplied the well-worn *Baker* factors as allowing Guarantee Clause claims to be justiciable – even where no lawyer or jurist has yet identified a judicially manageable standard. ....................................................12

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Baird v. Norton*, 266 F.3d 408 (6th Cir. 2001) ............................................................6

*Baker v. Carr*, 369 U.S. 186 (1962) .......................................................... 2, 8, 11, 12

*Campbell v. Clinton*, 203 F.3d 19 (D.C. Cir. 2000) ...................................................6

*Chenowith v. Clinton*, 181 F.3d 112 (D.C. Cir. 1999) ...............................................6

*Chiles v. United States*, 69 F.3d 1094 (11th Cir. 1995) ...........................................10

*Colegrove v. Green*, 328 U.S. 549 (1946) ...................................................................8

*Coleman v. Miller*, 307 U.S. 433 (1939) .....................................................................5

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...............................................14

*Grant v. Meyer*, 828 F.2d 1446 (10th Cir. 1987) ........................................................3

*Hammad v. Gates*, 732 F.3d 990 (9th Cir. 2013) ......................................................13

*Hanson v. Wyatt*, 540 F.3d 1187 (10th Cir. 2008) ......................................................9

*Kelley v. United States ex Rel. Dept. of Justice*, 69 F.3d 1503 (10th Cir. 1995) .....10

*Kidwell v. City of Union*, 462 F.3d 620 (6th Cir. 2006) ...........................................10

*Kiernan v. Portland*, 223 U.S. 151 (1912) ...............................................................12

*Largess v. Supreme Judicial Court*, 373 F.3d 219 (1st Cir. 2004) .................... 10, 11

*Luther v. Borden*, 48 U.S. 1 (1849) ........................................................................2, 8

*McKee v. City of Louisville*, 616 P.2d 269 (Colo. 1980) ...........................................3

*Mueller v. Reich*, 54 F.3d 438 (7th Cir. 1995) .........................................................10

*Murtishaw v. Woodford*, 225 F.3d 926 (9th Cir. 2001) ............................................10

*New York v. United States*, 505 U.S. 144 (1992) ...................................... 2, 9, 10, 12

*Pac. States Tel. & Telegraph Co. v. Oregon*, 223 U.S. 118 (1912) .......................2, 8

*Raines v. Byrd*, 521 U.S. 811 (1997) ................................................................ passim

*Rangel v. Boehner*, 2013 WL 6487502, No. 13-540 (D.D.C. Dec. 11, 2013) ........13

*Rodriguez v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) ....................11

*Russell v. DeJongh*, 491 F.3d 130 (3d Cir. 2007) ......................................................6

*Schaffer v. Clinton*, 240 F.3d 878 (10th Cir. 2001) ...................................................6

*Schroder v. Bush*, 263 F.3d 1169 (10th Cir. 2001) ..................................................14

*Taylor v. Beckam*, 178 U.S. 548 (1900) ......................................................................8

*United States ex. Rel. Anti-Discrimination Ctr. of Metro N.Y. v. Westchester Cnty*,
    712 F.3d 761 (2d Cir. 2013) ................................................................................10

# TABLE OF AUTHORITIES

**PAGE**

*United States v. Hatch*, 722 F.3d 1193 (10th Cir. 2013) ........................................11
*Vieth v. Jubelirer*, 541 U.S. 267 (2004).................................................... 2, 8, 14, 15
*Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524 (5th Cir. 2013) ...................................................................................................................13
*Zivotofsky v. Clinton*, 132 S.Ct. 1421(2012)...........................................................13

## Constitutions

Colo. Const. art. V, § 1 ...............................................................................................2
Colo. Const. art. X, § 16 .............................................................................................7
Colo. Const. art. X, § 20(4).........................................................................................2
Colo. Const. art. XVIII, § 16 ......................................................................................7

## Statutes

28 U.S.C. § 1292(b) ....................................................................................................3

## Other Authorities

Elizabeth Price Foley and David Rivkin, "How five Colorado Democrats may have paved the way for Congress to sue the administration," March 13, 2014, opinion, The Daily Caller online...............................................................................................7

## RULE 35 STATEMENT

This case involves questions of exceptional importance: whether three state legislators[1] may enlist the federal judiciary to take sides in their dispute with the state's constitution, its governor, and its people over the proper role of direct democracy. A case involving more fundamental issues about the proper role of the federal courts in a system of horizontally and vertically divided power is hard to imagine. If the panel decision stands, this Circuit will be alone in giving federal judges the power to decide that some laws are unconstitutional because they are too democratic.

The panel reached two holdings, each of which is unique among the circuits and conflicts with Supreme Court precedent. *First*, the panel held that less than a handful of a state's legislators have standing to bring suit in federal court challenging a constitutional provision so long as they allege it "disempowers" them. Slip Op. 22 (attached). This conflicts with *Raines v. Byrd*, 521 U.S. 811 (1997), the Supreme Court's definitive legislative standing case, and is inconsistent with cases from the Third, Sixth, and D.C. Circuits.

*Second*, the panel held that these particular claims are justiciable, even when resolving them would require federal judges to define what counts as "core

---

[1] There are now only three legislator-plaintiffs in the case, as Claire Levy is no longer a Colorado State Representative and John P. Morse is no longer a Colorado State Senator.

1

functions" for Colorado's government, define the concept of a "republican form of government," and decide whether direct democracy conflicts with these newly-invented definitions. Op. 23. This conflicts with a long line of Supreme Court cases from *Luther v. Borden*, 48 U.S. 1 (1849), *Pacific States Tel. & Telegraph Co. v. Oregon*, 223 U.S. 118 (1912), *Baker v. Carr*, 369 U.S. 186 (1962) to *New York v. United States*, 505 U.S. 144 (1992) through *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) (plurality opinion). Here again, the Tenth Circuit stands alone. No other circuit requires what the panel would require of Colorado: the State must prove to the satisfaction of the federal judiciary "its right to exist as a State, republican in form." *Pac. States*, 118 U.S. at 151.

## BACKGROUND

Colorado's constitution has for over a century provided that the people reserve to themselves the broad power "to approve or reject at the polls any act or item, section, or part of any act of the general assembly." Colo. Const. art. V, § 1. For over two decades, the constitution has also specifically reserved the power to approve or reject acts of the general assembly that increase taxes. Colo. Const. art. X, § 20(4) ("§20"). This Court has recognized "that in Colorado the right to the initiative is not a matter of legislative grace but a right reserved by the people in the State constitution. The Colorado courts have treated the initiative as 'a fundamental right at the very core of our republican form of government'." *Grant*

*v. Meyer*, 828 F.2d 1446, 1456 n.14 (10th Cir. 1987) (quoting *McKee v. City of*

*Louisville*, 616 P.2d 269, 972 (Colo. 1980)).

Plaintiffs brought this action to "present[ ] for resolution the contest between direct democracy and representative democracy." App. 467, ¶ 1. The focus of their ire, however, are the procedural limits §20 places on legislators who wish to raise taxes. App. 480-82, ¶¶ 73-80. This, they say, is an "arrogation" of legislative power and thus a violation of the never before applied Guarantee Clause of the U.S. Constitution. App. 467, ¶ 1, 483, ¶¶ 82, 92. The complaint also raised derivative Guarantee Clause claims under the Colorado enabling act, an Equal Protection claim, and a state law "impermissible amendment" claim.

Believing this to be a political debate for Colorado's people and representatives, rather than one for federal judges, the Governor moved to dismiss the complaint. The district court granted the motion in part and denied it in part, holding that the plaintiffs who were current state legislators possessed standing and that the political question doctrine did not bar the Guarantee Clause or enabling act claims. App. 431-62. The district court rejected the Equal Protection claim and declined to assess the standing of the remaining plaintiffs or the impermissible amendment claim. App. 434.

The Governor successfully moved to certify the order for interlocutory appeal under 28 U.S.C. § 1292(b), and the district court agreed, stating "this litigation will

quite literally affect every individual and corporate entity in the State of Colorado." App. 570. This Court recognized the importance of the case and the issues, and accepted the appeal. App. 612. The panel issued its decision affirming the district court order.

## REASONS FOR REHEARING EN BANC

The panel opinion leaves this Circuit out on a limb by itself on two important questions addressing the reach of federal judicial power into the internal affairs of state government: legislator standing and the justiciability of attacks on state constitutions under the Guarantee Clause. Whether to step so far onto that limb is a decision the entire Court should make.

**I.    Legislator-Standing: The panel has created "a drastic extension" of legislative standing that the Supreme Court has said is a step it is "unwilling to take."**

The panel held the plaintiff-legislators have standing based on this asserted injury: "their disempowerment rather than the failure of any specific tax increase." Op. 22. Or, put another way: "the elimination of their authority to make laws raising taxes or increasing spending." Op. 26. In this, it is indistinguishable from *Raines*, where legislators "assert[ed] injury to their institutional power as legislators," and the "claim of standing [was] based on a loss of political power, not loss of any private right." 521 U.S. at 826, 821. The Supreme Court

4

definitively ruled that such an injury is not "sufficiently concrete to have established Article III standing." *Id.* at 830. The panel here held the opposite.

To escape this direct conflict, the panel looked back past *Raines* to the "one case in which we upheld standing for [state legislators] claiming an institutional injury." *Id*. This too was attempted by the legislators in *Raines*, who sought to use *Coleman v. Miller*, 307 U.S. 433 (1939) as a vessel for expanded legislator-standing. The Supreme Court, however, sharply rejected this use of *Coleman*, recognizing that case involved a unique circumstance: the Kansas legislature had voted against ratifying a proposed amendment to the U.S. Constitution, only to have a subsequent vote, this time with a 20-20 tie broken by the Lieutenant Governor in favor of ratification. Twenty-one senators sued to challenge the second vote, claiming this completely nullified the previous vote against ratification. 307 U.S. at 435-38.

Before *Raines*, some courts had read *Coleman* as the panel did here, *see Raines,* 521 U.S. at 816-17, 820 n.4, but after *Raines* that is simply untenable. "It is obvious, then, that our holding in *Coleman* stands (at most) for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative act have standing to sue . . . ." *Id*. at 823 (citations omitted). The Court went on: "It should be equally obvious that appellees' claim does not fall within [the] holding in *Coleman*, as thus understood," because the plaintiffs "have not

alleged [1] that they voted for a specific bill, [2] that there were sufficient votes to pass the bill, and [3] that the bill was nonetheless deemed defeated." *Id*. at 824. So too here.

Not surprisingly, after *Raines*, lower courts have refused to recognize the few disempowerment claims legislators have brought. In conflict with the panel, the Third, Sixth, and D.C. Circuits have rejected legislator-standing claims post-*Raines*. *See Russell v. DeJongh*, 491 F.3d 130 (3d Cir. 2007) (rejecting standing); *Baird v. Norton*, 266 F.3d 408, 412-13 (6th Cir. 2001) (same); *Chenowith v. Clinton*, 181 F.3d 112 (D.C. Cir. 1999) (same); and *Campbell v. Clinton*, 203 F.3d 19 (D.C. Cir. 2000) (same). This Court too has recognized that simply asserting a change to one's lawmaking power is inadequate. *See Schaffer v. Clinton*, 240 F.3d 878, 886 (10th Cir. 2001).

To escape *Raines*, the panel leans on a handful of factual distinctions, noting that this case involves state rather than federal legislators, Op. 19-20; that legislators cannot override a constitutional limit, Op. 19; and that a legislative committee authorized an amicus brief supporting the concept of legislators' standing. Op. 20. None of these holds up to scrutiny.[2] These assorted factual

---

[2] For example, the *Raines* Court did not distinguish *Coleman* on the theory that federal courts somehow have *more* power to interfere with state than federal government structure – to the contrary, the potential relevance was that the state's own courts had found standing for its legislators. *Raines*, 521 U.S. at 822-23. Not so here. Nor did Colorado's legislature "authorize" this lawsuit. *Cf. Id.* at 829.

distinctions cannot hide that the Plaintiffs' alleged injury, and core argument is identical to that in *Raines*: the legislative power involved in voting for certain important bills (here, a tax increase; there, appropriations) now "means something different." *Raines,* 521 U.S. at 825.

The Supreme Court rejected this abstract, disempowerment theory of standing:

> Even taking appellees at their word about the change in the "meaning" and "effectiveness" of their vote for appropriations bills which are subject to the Act, we think their argument pulls *Coleman* too far from its moorings. Appellees' use of the word "effectiveness" to link their argument to *Coleman* stretches the word far beyond the sense in which the *Coleman* opinion used it. There is a vast difference between the level of vote nullification at issue in *Coleman* and the abstract dilution of institutional legislative power that is alleged here. To uphold standing here would require a drastic extension of *Coleman*. We are unwilling to take that step.

*Id*. at 825-26.

The panel took that step, and has opened the courts up to countless novel claims.[3] Take any example of a state constitutional limit on government power: Colorado recently forbade the legislature from prohibiting the sale or possession of marijuana. Colo. Const. art. XVIII, § 16. Colorado also, like nearly every state, has a prohibition on deficit spending. *Id.* art. X, § 16. Under the Tenth Circuit's new standing theory, state legislators who would like to be able to ban marijuana or run

---

[3] *See, e.g.*, Elizabeth Price Foley and David Rivkin, "How five Colorado Democrats may have paved the way for Congress to sue the administration," March 13, 2014, opinion, The Daily Caller online at http://bit.ly/1pX43HF.

a deficit would be permitted to enlist the federal courts in their efforts. No other court has recognized such an expansive role for federal judicial oversight of state governments' division of power.

## II.    Justiciability: By holding that attacks on direct democracy under the Guarantee Clause are justiciable, the panel has gone at least two steps beyond what any other Court, including the Supreme Court and this Court, have held.

The Supreme Court said – over a century ago – that the question of whether courts are empowered "to determine when a State has ceased to be republican in form and to enforce the Guarantee [Clause]" was "not novel, as that question has long since been determined by this court … to be political in character, and therefore not cognizable by the judicial power." *Pac. States*, 223 U.S. at 133. And indeed, that has been recognized repeatedly to be the rule.[4] The panel, however, rejected this rule.[5] The en banc court should decide whether that was error.

_____

[4] *See, e.g.*, *Luther,* 48 U.S. at 1; *Taylor v. Beckam*, 178 U.S. 548, 578-79 (1900); *Colegrove v. Green*, 328 U.S. 549, 556 (1946) (plurality opinion) ("[V]iolation of the great guaranty of a republican form of government in States cannot be challenged in the courts."); *Baker*, 369 U.S. 186 (1962); *Vieth*, 541 U.S. 267, 277 (2004) (plurality opinion) (using claims under guaranty clause as examples of nonjusticiable political questions).

[5] The panel also held the derivative enabling act claim, which is based on statutory language that does no more than repeat that of the Guarantee Clause, was "independently justiciable" because statutes are "never" subject to political question analysis. Op. 48-49. This was flat error, as the Supreme Court in fact faced just such an enabling act claim in *Pacific States* and rejected it as nonjusticiable. *See* 223 U.S. at 139 (claim VI: violation of "the act of Congress admitting Oregon to the Union"). The Court recognized that "the basis of all the contentions" had "absolute unity" and properly had to be considered a "single issue" "whether the enforcement of [the guarantee]" was for the courts. *Id.* at 137.

**A.    The Supreme Court has not overruled the longstanding "general rule" that the Guarantee Clause is nonjusticiable.**

The panel's decision to embark on the journey of making the Guarantee Clause justiciable depends initially on its misreading of *New York v. United States*.  To be sure, in that case the Court did question the provenance of its past "sweeping assertion" that Guarantee Clause claims are never justiciable, noting that Lawrence Tribe, among others, had argued that the rule should be reversed and "courts should address the merits of such claims, at least in some circumstances." 505 U.S. 144, 185 (1992). The *New York* Court then "indulg[ed] the assumption" that the claims at issue were justiciable because it had no trouble dismissing them for other reasons – but it manifestly refused to decide whether to undo the existing "general rule of nonjusticiability." *See id*. at 184-85 ("We need not answer this difficult question today."). The general rule thus remains in place and must be followed here.

The difficult question having been identified but unresolved has left the circuits and lower courts in a bit of a puzzle. *See, e.g.*, *Hanson v. Wyatt*, 540 F.3d 1187, 1202-03 (10th Cir. 2008) (split panel holding that *New York* allows courts, in some circumstances, to assume justiciability and proceed to reject the merits of claims.) But no court has done what the panel did here: answer the question the *New York* Court put off and overrule the categorical rule. Several courts continue to treat the

9

Guarantee Clause as simply nonjusticiable after *New York*.[6] Other courts have, like *New York* itself, assumed justiciability and dismissed for other reasons,[7] or avoided the question altogether.[8] None of these cases, however, had found that a state *must* litigate the merits of a Guarantee Clause claim.

Until the Supreme Court answers the question it eluded in *New York*, the lower courts are bound by the *Luther/Pacific States/Colegrove/Baker* line of cases that established the "general rule of nonjusticability," *New York*, 505 U.S. at 184. It may be that the Supreme Court will accept a case – perhaps even this one – and take the step the panel took, reversing the general rule. Until then courts are bound to "leave to [that] Court the prerogative to overrule its own precedents*." Rodriguez*

---

[6] *United States ex. Rel. Anti-Discrimination Ctr. of Metro N.Y. v. Westchester Cnty*, 712 F.3d 761, 774-75 (2d Cir. 2013) ("As its final constitutional salvo, the County argues that the instant interpretation of the consent decree violates the Constitution's Guaranty Clause. … As this and other courts have repeatedly noted, such determinations are nonjusticiable political questions."); *Murtishaw v. Woodford*, 225 F.3d 926 (9th Cir. 2001) (affirming that Guarantee Clause claim challenge to initiative not justiciable); *Chiles v. United States*, 69 F.3d 1094 (11th Cir. 1995) (affirming that Guarantee Clause claim presents a political question).

[7] *See, e.g.*, *Kelley v. United States ex Rel. Dept. of Justice*, 69 F.3d 1503, 1511 (10th Cir. 1995) (assuming without deciding justiciability); *Largess v. Supreme Judicial Court*, 373 F.3d 219, 228 (1st Cir. 2004) ("Much to the contrary, the Court in *New York* affirmed that the Guarantee Clause (if claims under it are justiciable at all) is only offended in highly limited circumstances.").

[8] *Mueller v. Reich*, 54 F.3d 438, 443 (7th Cir. 1995) ("Since we do not think the Department of Labor's rule inimical to the guarantee clause, we need not speculate on whether the Supreme Court continues to believe that the clause does not create any legally enforceable rights."); *see also Kidwell v. City of Union*, 462 F.3d 620, 635 n.5 (6th Cir. 2006) (Martin, J., dissenting) ("perhaps the day has come" for the Supreme Court to resolve the difficult question whether Guarantee Clause claims are justiciable).

*v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989); *United States v. Hatch*, 722 F.3d 1193, 1204-05 (10th Cir. 2013) ("we may not blaze a new constitutional trail").  The panel erred in getting in front of the Supreme Court on that trail.

### B.    Even if some Guarantee Clause claims are justiciable, claims about the proper balance between direct and representative democracy are not.

Even if *New York* cracked the door for federal courts to adjudicate *some* Guarantee Clause claims, nothing suggests the courts are now empowered to divine the lines demanded by the Plaintiffs in this case. The *New York* Court did not disturb the generations of cases running from *Luther* through *Pacific States* and *Baker* that created and defined the political question doctrine. Those cases all involved citizens or groups of them asking the federal courts to help them overcome perceived political impotence. Those cases, unlike *New York*, were attacks "on the State as a State ... to demand of the State that it establish its right to exist as a State, republican in form." *Baker*, 369 U.S. at 227-28 (quotation omitted).

If there are justiciable Guarantee Clause claims, they must be akin to a monarchy or a dictatorship taking over a state,[9] or perhaps claims similar to that

---

[9] *See Largess*, 373 F.3d at 225, 229 (speculating that the Guarantee Clause could perhaps be used in "unusual and extreme cases" such as establishment of monarchy); *Risser v. Thompson*, 930 F.2d 549, 552-53 (7th Cir. 1991) (no Guarantee Clause violation as Wisconsin's Governor is neither a "hereditary prince" nor" dictator").

which faced the Court in *New York*, where a state was the *plaintiff* seeking to undo alleged federal overreach. 505 U.S. at 154. Such claims would be more in line with the actual text of the Constitution, which imposes on "the United States" the obligation to guarantee something to the states, not vice versa, art. IV, § 4. In any event, the claims in this case are the polar opposite and fit squarely in the confines of rejected Guarantee Clause claims. *See, e.g., Kiernan v. Portland*, 223 U.S. 151 (1912) (dismissing Guarantee Clause challenge to initiative authority as nonjusticiable).

C.   **The panel misapplied the well-worn *Baker* factors as allowing Guarantee Clause claims to be justiciable – even where no lawyer or jurist has yet identified a judicially manageable standard.**

Deciding this case on the merits would require the federal courts to either resolve "the contest between direct democracy and representative democracy" as the complaint posits, or at least resolve whether certain "core functions" (a concept to be defined on-the-go by federal judges) of state governments are beyond the reach of direct democratic oversight. As an initial matter, the *Baker* factors for determining if there is a political question need not apply when the claims asserted are Guarantee Clause claims. *Baker* created the current test for political questions, but it did so by pointing to the Guarantee Clause *as the paradigm example of such a nonjusticiable question. See Baker*, 369 U.S. at 218-19, 227-29 (citing *Luther*, 48 U.S. at 34 and *Pac. States*, 223 U.S. at 150-51); *see also Vieth*, 541 U.S. at 277

12

(plurality opinion); *Zivotofsky v. Clinton*, 132 S.Ct. 1421, 1434 n.2 (2012) (Sotomayor, J., and Breyer, J., concurring) (recognizing that, in reviewing its decision in *Luther v. Borden*, the *Baker* Court "found present features associated with each of the three rationales underlying *Baker's* factors").

It is therefore hardly surprising that the *Baker* factors sharply undermine the Plaintiffs' claim to have found the first justiciable Guarantee Clause case. *First*, under the *Baker* analysis, courts have repeatedly held that the Guarantee Clause is textually committed to Congress,[10] and thus nonjusticiable. The panel declared "the United States" of the Guarantee Clause to include Article III Courts, a novel holding, and then explained away both *Luther* and *Pacific States* as not having decided the Guarantee Clause was textually committed to another branch, in spite of the two cases being the very source of this factor in *Baker*. The panel is free to disagree with *Baker*, but was not free to refuse to follow it.

*Second*, the panel blithely admits that the Guarantee Clause cases "do not provide much meaningful guidance in this case" about judicially manageable standards, and that there exists "sparse judicial precedent interpreting the Guarantee Clause to aid [the court's] analysis." Op. 39. Beyond being sparse, or

---

[10] *See, e.g.*, *Hammad v. Gates*, 732 F.3d 990, 1005 (9th Cir. 2013) (maintenance of a republican form of government is "exclusively entrusted to the political branches of government"); *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 542 (5th Cir. 2013) (same); *Rangel v. Boehner*, 2013 WL 6487502, No. 13-540, *60 (D.D.C. Dec. 11, 2013) (citing *Luther* for proposition that the Guarantee Clause is textually committed to political branches).

merely lacking in guidance, there are no judicially manageable standards to guide this case.[11] To side-step this fatal flaw the panel concludes that "in order to develop judicially manageable standards, courts must be permitted to reach the stage of litigation where such standards are developed." Op. 41. This is a tacit admission that no judicially manageable standards exist.

As the Supreme Court has made clear, *plaintiffs – not the Governor –* have the burden to prove their case is justiciable and establish that manageable standards exist at the onset of the case. *Vieth*, 541 U.S. at 313 (where plaintiffs have provided "no standard by which to measure the burden [they] claim" then their complaint "must be dismissed as a result") (Kennedy, J, concurring in judgment); *see also Schroder v. Bush*, 263 F.3d 1169 (10th Cir. 2001) (relying on plaintiffs' initial pleadings to guide the *Baker* inquiry). The panel wrongly points to *District of Columbia v. Heller*, 554 U.S. 570 (2008) and the "sparse" second amendment case law predating that watershed decision as support for this Guarantee Clause case being justiciable. This is a category mistake. Nothing in *Heller* suggests there was a justiciability problem or lack of judicially manageable standards. If the analysis of old documents in *Heller* solves the judicially manageable standards requirement (as the panel posits), then every case would satisfy the Baker prong as courts could

---

[11] The district court admitted as much: "At this early stage of the proceedings, the Court cannot resolve the issue of whether there will be judicially discoverable and manageable standards for evaluating Plaintiffs' Guarantee Clause claim." App. 449.

always "develop[]" standards later in litigation. Op. 40-41. Plaintiffs, the district

court, and now the panel have tried, and failed, to find a judicially manageable

standard as required by *Baker*. The law does not permit them to use this case to

make them up. *Vieth*, 541 U.S. at 278-82.

* * *

No court has ever held that a state has violated the Guarantee Clause, and the

state and the Governor are confident they will prevail if forced to proceed. But

even being forced to satisfy federal judges of Colorado's republican nature is an

unprecedented interference by the courts into the affairs of a sovereign state, and

the en banc court should decide if the Tenth Circuit is the proper court to undo

what had been over a century and a half of unbroken precedent.

## CERTIFICATE OF DIGITAL SUBMISSION
## AND PRIVACY REDACTIONS

I hereby certify that a copy of the foregoing **Governor's Petition**

**for Rehearing En Banc**, as submitted in Digital Form via the court's

ECF system, is an exact copy of the written document filed with the

Clerk and has been scanned for viruses with the Symantec Endpoint

Protection, Version 11.0.7101.1056, and, according to the program, is

free of viruses.  In addition, I certify all required privacy redactions

have been made.


*s/ Daniel D. Domenico*

_____

# CERTIFICATE OF SERVICE

This is to certify that on this 4th day of April, 2014, I have provided service of the **Governor's Petition for Rehearing En Banc** through the federal ECF filing protocol and by e-mailing to the following attorneys and/or their law firms:

**Attorneys for Plaintiffs**:

Lino S. Lipinsky de Orlov (llipinsky@mckennalong.com)
Herbert Lawrence Fenster(hfenster@mckennalong.com)
David Evans Skaggs(dskaggs@mckennalong.com)
Michael F. Feeley(mfeeley@bhfs.com)
John A. Herrick(jherrick@bhfs.com)
Geoffrey W. Williamson(gwilliamson@bhfs.com)
Carrie E. Johnson(cjohnson@bhfs.com)

**Attorneys for Amici Curiae**:

Melissa Hart(melissa.hart@colorado.edu)
David Benjamin Kopel(david@i2i.org)
John M. Bowlin (john.bowlin@dgslaw.com
Emily L. Droll (Emily.droll@dgslaw.com)
Andrew M. Low (Andrew.low@dgslaw.com)
D'Arcy Winston Straub(dstraub@ecentral.com)
Ilya Shapiro (ishapiro@cato.org)
James Martin Manley (jmanley@mountainstateslegal.com)
Harold Haddon (hhaddon@hmflaw.com)
Laura Kastetter(lkastetter@hmflaw.com)
Matthew Douglas (matthew.douglas@aporter.com)
Nathaniel J. Hake(Nathaniel.hake@aporter.com)
Paul Rodney (paul.rodney@aporter.com)
Holly Elizabeth Sterrett (holly.sterrett@aporter.com)
Joseph Guerra (jguerra@sidley.com)
Kathleen Moriarty Mueller (kmueller@sidley.com)
Catherine Carla Engberg (engberg@smwlaw.com)
Richard A. Westfall (rwestfall@halewestfall.com)

**In addition, a copy has been sent via U.S. Mail to the following:**

Luke A. Wake
Karen R. Harned
NFIB Small Business Legal Center
1201 F Street NW, Suite 200
Washington, DC 20004

*s/ Mary A. Brown*
_____