# CASE NO. 12-1445

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

ANDY KERR, Colorado State Representative, *et al.*,

    Plaintiffs-Respondents,

v.

JOHN HICKENLOOPER, Governor of Colorado, in his official capacity,

    Defendant-Petitioner.

---

On Appeal from the United States District Court for the District of Colorado
Case No. 11-cv-01350-WJM-BNB
Honorable William J. Martínez, United States District Court Judge

---

## RESPONSE IN OPPOSITION TO
## PETITION FOR REHEARING *EN BANC*

---

| | |
|---|---|
| LINO S. LIPINSKY de ORLOV | MICHAEL F. FEELEY |
| HERBERT LAWRENCE FENSTER | GEOFFREY M. WILLIAMSON |
| DAVID E. SKAGGS | CARRIE E. JOHNSON |
| McKenna Long & Aldridge LLP | SARAH MAY MERCER CLARK |
| 1400 Wewatta Street, Suite 700 | Brownstein Hyatt Farber Schreck LLP |
| Denver, Colorado 80202 | 410 17th Street, Suite 2200 |
| (303) 634-4000 | Denver, Colorado 80202-4437 |
| | (303) 223-1100 |

*Attorneys for Plaintiffs-Respondents*

## **TABLE OF CONTENTS**

**page**

I. RESPONDENT HAS FAILED TO PRESENT A BASIS FOR *EN BANC* RECONSIDERATION. ........................................................................1

II. PETITIONER'S ARGUMENT ON STANDING IS WITHOUT MERIT. ..................................................................................................5

III. PETITIONER'S ARGUMENT ON JUSTICIABILITY IS WITHOUT MERIT. ..................................................................................................8

IV. CONCLUSION ......................................................................................12

# TABLE OF AUTHORITIES

**page**

**Cases**

*Air Line Pilots Ass'n, Int'l v. Eastern Air Lines, Inc.*,
   863 F.2d 891 (D.C. Cir. 1989)..................................................................3

*Baird v. Norton*,
   266 F.3d 408 (6th Cir. 2001).....................................................................7

*Baker v. Carr*,
   369 U.S. 186 (1962) ..............................................................4, 8, 10, 11

*Bartlett ex rel. Neuman v. Bowen*,
   824 F.2d 1240 (D.C. Cir. 1987) ...............................................................2

*Beary Landscaping, Inc. v. Costigan*,
   667 F.3d 947 (7th Cir. 2012).....................................................................9

*Branson Sch. Dist. RE-82 v. Romer*,
   161 F.3d 619, 625–27 (10th Cir. 1998)..................................................11

*Brown v. Sec'y of State of Fla.*,
   668 F.3d 219 (11th Cir. 2012).................................................................9

*Campbell v. Clinton*,
   203 F.3d 19 (D.C. Cir. 2000) ..................................................................7

*Chenowith v. Clinton*,
   181 F.3d 112 (D.C. Cir. 1999) ................................................................7

*Coleman v. Miller*,
   307 U.S. 433 (1939) ....................................................................4, 5, 7, 8

*Corr v. Metro. Wash. Airports Auth.*,
   800 F. Supp. 2d 743 (E.D. Va. 2011).......................................................9

*Hanson v. Wyatt*,
   540 F.3d 1187 (10th Cir. 2008)...............................................................9

*Japan Whaling Ass'n v. American Cetacean Soc'y*,
   478 U.S. 221 (1986) ..............................................................................12

# TABLE OF AUTHORITIES
Cont.

**page**

*Largess v. Supreme Judicial Ct.*,
  373 F.3d 219 (1st Cir. 2004) ................................................................................9

*Luther v. Borden*,
  48 U.S. (7 How.) 1 (1849) ............................................................................4, 9, 11

*Minor v. Happersett*,
  88 U.S. 162 (1875) ...............................................................................................9

*New York v. United States*,
  505 U.S. 144 (1992) ..........................................................................4, 8, 9, 10, 11

*Pacific States Telephone & Telegraph Co. v. Oregon*,
  223 U.S. 118 (1912) .................................................................................4, 8, 9, 11

*Raines v. Byrd*,
  521 U.S. 811 (1997) ..................................................................................4, 5, 6, 7, 8

*Risser v. Thompson*,
  930 F.2d 549 (7th Cir. 1991) ................................................................................9

*Russell v. DeJohngh*,
  491 F.3d 130 (3d Cir. 2007) .................................................................................7

*Schaffer v. Clinton*,
  240 F.3d 878 (10th Cir. 2001) ..............................................................................7

*Zivotofsky v. Clinton*,
  132 S. Ct. 1421 (2012) ........................................................................................11

## Other Authorities

Colo. Const. art. X § 20 .............................................................................................2

Colorado Enabling Act, ch. 139, § 4, 18 Stat. 474 (1875) ..................................2, 11

U.S. Const. art. IV, § 4 ..............................................................................................2

# TABLE OF AUTHORITIES
## Cont.

**page**

**Rules**

Fed. R. App. P. 35 ................................................................................... 1, 2

Fed. R. App. P. 35(a) .................................................................................. 1

Fed. R. App. P. 35(b)(1) ............................................................................. 1

Pursuant to Rule 35 of the Federal Rules of Appellate Procedure and this Court's April 8 order requesting this response, Respondents respectfully oppose Petitioner's request for *en banc* reconsideration of the Panel's March 7 decision affirming the District Court.

## I. RESPONDENT HAS FAILED TO PRESENT A BASIS FOR *EN BANC* RECONSIDERATION.

Petitioner has failed to assert any colorable basis for *en banc* reconsideration of the Panel's decision. Pursuant to the Federal Rules of Appellate Procedure, "[a]n *en banc* hearing or rehearing is not favored and ordinarily will not be ordered." Fed. R. App. P. 35(a). Such a rehearing is proper only when (1) there is a need to secure or to maintain uniformity of the court's decisions, or (2) the proceeding before the court involves a question of exceptional importance. *Id*.

Rule 35 also provides that every petition for an *en banc* rehearing must begin with a statement that either (a) the panel decision conflicts with a decision of the Supreme Court or this Court, or (b) the proceeding involves one or more questions of exceptional importance, including that the Panel's decision conflicts with a decision of another Circuit. Fed. R. App. P. 35(b)(1). Here, Petitioner has to point to the merits to claim that a Panel decision limited to procedural issues involves questions of "exceptional importance." Pet. for Reh'g 1. Petitioner also incorrectly states that the Panel's decision both

conflicts with Supreme Court precedent and is inconsistent with decisions of other Circuits. Pet. for Reh'g 1–2.

Petitioner's reliance on the merits to characterize the pending Section 1292(b) appeal as involving questions of exceptional importance is misplaced given Petitioner's focus only on the threshold issues of standing and justiciability. The merits of Respondents' claims, which Petitioner emphasizes throughout his petition, are not yet before the Court.[1] Instead, the Petition presents the sole question of whether the Court should reconsider the Panel's unanimous and relatively routine procedural ruling simply because Petitioner disagrees with the decision.[2] Although styled to trigger Rule 35's grounds for

---

[1] The District Court will eventually need to adjudicate the important questions that underlie Respondents' claims: whether Colorado's Taxpayer's Bill of Rights ("TABOR"), Colo. Const. art. X § 20, violates the assurances of a republican form of government found in both the U.S. Constitution's Guarantee Clause and in Colorado's Enabling Act. *See* U.S. Const. art. IV, § 4 & Colorado Enabling Act, ch. 139, § 4, 18 Stat. 474, 474 (1875). Petitioner also mischaracterizes the effect of the Panel's decision as now compelling Petitioner to defend Colorado's right to exist in republican form. Pet. for Reh'g 2. Rather, the Panel's decision simply disposes of Petitioner's procedural objections so the case may continue to move beyond the dismissal stage. In any event, the parties agree that Colorado has an obligation to maintain a republican form of government; the issue is whether TABOR violates that obligation.

[2] Petitioner improperly "reduces the 'exceptional importance' test to a self-serving and result-oriented criterion" in an attempt to win *en banc* review of a procedural decision that "merely follows well-established Supreme Court precedent." *See Bartlett ex rel. Neuman v. Bowen*, 824 F.2d 1240, 1242–43 (D.C. Cir. 1987) (Edwards, J., concurring in the denial of rehearing *en banc* of a set of

2

an *en banc* rehearing, the Petition is a rehash of the arguments Petitioner has already presented to the Panel and to the District Court. There is no reason for the Court to hear them again. "[O]nly in the rarest of circumstances . . . should we countenance the drain on judicial resources, the expense and delay for the litigants, and the high risk of a multiplicity of opinions offering no authoritative guidance, that full circuit rehearing of a freshly decided case entails." *Air Line Pilots Ass'n, Int'l v. Eastern Air Lines, Inc.*, 863 F.2d 891, 925 (D.C. Cir. 1989) (Ginsburg, C.J., concurring in the denial of rehearing *en banc*; internal quotation omitted).

    Petitioner's statements that the Panel's decision has "undo[ne] what had been over a century and a half of unbroken precedent" and will haunt the Circuit for years to come are equally unpersuasive grounds for granting the Petition. *See* Pet. for Reh'g 15.[3] Yet, the Petition fails to point to a single case that the Panel did not carefully consider. Petitioner's claim that the Panel's opinion conflicts with decisions from the Supreme Court and other Circuits appears manufactured, misstates the controlling case law, and slights the care with

---

three cases, including a case concerning whether Congress, given the separation of powers, may bar judicial review of the constitutionality of a legislative act).

    [3] In addition, Petitioner asserts that the Panel's opinion leaves the Circuit "out on a limb" with standing; leans on "a handful" of distinguishing facts; opens the door "to countless novel claims"; embarks "on the journey of making the Guarantee Clause justiciable"; and "divine[s] the lines" of justiciability. Pet. for Reh'g 4, 6–7, 9, 11.

3

which the Panel and the District Court applied the *Coleman*/*Raines*[4] standing analysis and the political question doctrine.[5]

While this case will eventually present an important question on the merits, the Panel adequately and appropriately addressed the procedural matters that Petitioner raised. The Panel conducted a thorough analysis of precedent, applying it to this case's narrow factual situation and concluding that the District Court did not err. Accordingly, there is no basis for revisiting the Panel's opinion.

---

[4] In *Coleman v. Miller*, 307 U.S. 433, 438 (1939), the Supreme Court held that members of a state legislature may have standing to sue in order to vindicate "the plain, direct, and adequate interest in maintaining the effectiveness of their votes." *Id.*; *see also* Op. 11. The legislator-plaintiffs were accorded standing in that case. *Id.* at 446. *Coleman* was later distinguished in *Raines v. Byrd*, 521 U.S. 811, 814 (1997), in which six members of Congress were found not to have legislator-plaintiff standing, and in which the Court explained that *Coleman* affords standing to legislator-plaintiffs only if their "votes would have been sufficient to defeat (or enact) a specific legislative Act . . . on the ground that their votes have been completely nullified." *Raines*, 521 U.S. at 823; *see also* Op. 12–14.

[5] The Panel's consideration of the political question doctrine included several steps. Op. 29–46. The first step was to examine *Luther v. Borden*, 48 U.S. (7 How.) 1, 42–43 (1849), and *Pacific States Telephone & Telegraph Co v. Oregon*, 223 U.S. 118, 136–37 (1912), to determine whether those cases preclude Guarantee Clause claims. Op. 29–35. The Panel decided they do not. Op. 32–35. Next, the Panel looked to the Supreme Court's decision in *New York v. United States*, 505 U.S. 144, 157 (1992), and several other cases to determine the contours of the case law on this issue. Op. 34–35. Lastly, the Panel had to determine the applicability of the six tests for political question justiciability in *Baker v. Carr*, 369 U.S. 186, 217 (1962). Op. 35–46. The Panel decided none applies. Op. 46. Thus, the Panel found no reason to preclude a merits determination of Respondents' claims. Op. 35, 46.

## II. PETITIONER'S ARGUMENT ON STANDING IS WITHOUT MERIT.

Petitioner contends that the Panel's reading of *Coleman*, 307 U.S. 433, "looked back past *Raines*," 521 U.S. 811, and conflicts with decisions from the Supreme Court and other Circuits. Pet. for Reh'g 4–8. It is Petitioner, however, who has misread the rules for legislative standing, summarily arguing that Respondents' injury is "indistinguishable" from the injury in *Raines*. *Id.* at 4.

Both the Panel and the District Court expressly rejected this argument and devoted extensive discussion to both *Raines* and *Coleman*, as well as other pertinent case law, to parse those cases' similarities, differences, and applicability to this case. *See* Op. 10–26. The Panel found neither *Coleman* nor *Raines* to be perfectly analogous to the plight of the legislator-plaintiffs here. Op. 14. But the Panel was clear that Respondents come much closer to the legislator-plaintiffs in *Coleman* than to those in *Raines*. Op. 15. The Panel explained that TABOR deprives the Colorado General Assembly of the ability to vote on any tax increase and, because TABOR is part of the Colorado constitution, it is beyond legislative remedy:

> Neither *Coleman* nor *Raines* maps perfectly onto the alleged injury in this case. . . . These allegations [that the General Assembly operates not as a legislature but as an advisory body regarding taxation empowered only to recommend changes in the law to the electorate] fall closer to the theory of vote nullification espoused in *Coleman* than to the abstract dilution theory rejected in

5

> *Raines*. Under TABOR, a vote for a tax increase is completely ineffective because the end result of a successful legislative vote in favor of a tax increase is not a change in the law. A vote that is advisory from the moment it is cast, regardless of how other legislators vote, is "ineffective" in a way no vote envisioned by [the Line Item Veto Act at issue in *Raines*] could be.

Op. 14–15 (internal footnote omitted).

Petitioner claims that the Panel adopted the "abstract, disempowerment theory of standing" that *Raines* rejected and that the Panel's decision conflicts with *Raines*. Pet. for Reh'g 6–7. To the contrary, the Panel focused on the concrete injury TABOR inflicts on the legislator-plaintiffs. Op. 15, 17–18, 21, 23–25. Similarly, Petitioner incorrectly maintains that the Panel's opinion conflicts with the case law from other Circuits rejecting legislator standing. Pet. for Reh'g 6. Invoking these cases, with their easily distinguishable facts, is disingenuous at best.

The Panel considered these and the other cases involving legislator standing. Op. 15–25. It observed that *Raines* reflected a long line of case law denying standing to a legislator whose alleged injury is nothing more than dissatisfaction with the actions or inactions of his colleagues:

> We agree with these cases that *Raines* rested in large measure on the plaintiffs' ability to correct the alleged injury through ordinary legislation, an ability the legislator-plaintiffs in this case lack. A legislator who complains of nothing more than dissatisfaction with the

6

> actions, or inaction, of his colleagues does not state an injury to a judicially cognizable interest.

Op. 19.[6]

Petitioner misses, but the Panel clearly spelled out, that *Raines* turned on the Congressional plaintiffs' loss on a vote that compromised their institutional authority but that was remediable through the normal, internal legislative process. This case, however, concerns the blanket loss of core legislative powers under a constitutional ban susceptible of no legislative remedy. *See* Op. 21. This basis for standing is a stronger version of the theory of standing set forth in *Coleman* and that *Raines* left in place, and not one to be questioned by a strained reading of *Raines*.[7]

Distracting from the Panel's analysis and application of the case law to the narrow circumstances of this case, Petitioner warns that the Panel's decision opens the door to "countless novel claims" by creating a new theory under

---

[6] The cases Petitioner cites include *Russell v. DeJohngh*, 491 F.3d 130, 133 (3d Cir. 2007); *Baird v. Norton*, 266 F.3d 408, 412–13 (6th Cir. 2001); *Schaffer v. Clinton*, 240 F.3d 878, 886 (10th Cir. 2001); *Campbell v. Clinton*, 203 F.3d 19, 20 (D.C. Cir. 2000); and *Chenowith v. Clinton*, 181 F.3d 112, 113 (D.C. Cir. 1999). These cases do not contradict the Panel's standing analysis, but turn on obviously distinguishable facts. For example, in *Russell*, the court distinguished the procedural dispute there, which was between a state senator and a territorial government, from a proper case for standing, which involves a dispute where the members of the state legislature have no effective remedy in the political process. *Russell*, 491 F.3d at 135.

[7] *Raines* did not overrule *Coleman*, as Petitioner suggests. *See* Pet. for Reh'g 6-8.

7

which a state legislator would possess standing to challenge *any* citizen initiative that limited the power of the General Assembly. Pet. for Reh'g 7. Thus, Petitioner persists in mistaking this case as a general attack on the initiative power. It is not. It does not matter *how* TABOR was enacted, but, rather, *what it does* to the powers of the General Assembly.

In sum, the Panel's holding on standing is consistent with *Coleman*, *Raines*, and the case law of this Circuit and other Circuits. It properly affirmed the District Court's careful analysis that Respondents suffered a concrete injury sufficient to satisfy the injury-in-fact prong of the standing requirement.[8] Thus, there is no basis for revisiting the Panel's decision on standing.

### III. PETITIONER'S ARGUMENT ON JUSTICIABILITY IS WITHOUT MERIT.

Petitioner next takes issue with the Panel's decision to affirm the District Court's conclusion that the political question doctrine does not bar this suit. Petitioner contends that the Panel misread *New York*, 505 U.S. 144, misunderstood *Pacific States*, 223 U.S. 118, and misapplied *Baker*, 369 U.S. 186. Op. 8–15. Contrary to Petitioner's continued insistence that those cases bar Guarantee Clause claims, many federal courts have adjudicated such claims,

---

[8] Petitioner does not challenge the Panel's analysis of the causation and redressability prongs of the standing inquiry, and so Respondents do not address that part of the Panel's decision here.

8

including the Supreme Court in *Minor v. Happersett*, 88 U.S. 162 (1875).[9] The fact that most of these such claims fail is irrelevant to assessing their applicability to the justiciability question here. *See* Pet. for Reh'g 9-10. Rather, these cases dispel Petitioner's notion that the Guarantee Clause is non-justiciable and that, in upholding justiciability, the Panel "embark[ed] on [a] journey" of some kind. *See* Pet. for Reh'g 9. Indeed, after conducting a thorough analysis of *New York*, 505 U.S. 144, *Pacific States*, 223 U.S. 118, *Luther*, 48 U.S. 1, and other pertinent case law, the Panel concluded: "[W]e reject the proposition that *Luther* and *Pacific States* brand all Guarantee Clause claims as per se non-justiciable." Op. 35.[10]

Petitioner casts the Panel's opinion as overruling *New York* and "getting in front of the Supreme Court on [this] trail." Pet. for Reh'g 10–11. This is

---

[9] Since filing his motion to dismiss in the District Court, Petitioner has maintained this same sweeping contention that claims brought under the Guarantee Clause are non-justiciable even though he cites a case from this Circuit that allows a court to assume the justiciability of such claims. *See* Pet. for Reh'g 9, citing *Hanson v. Wyatt*, 540 F.3d 1187, 1202–03 (10th Cir. 2008). For other cases considering Guarantee Clause claims, *see Beary Landscaping, Inc. v. Costigan*, 667 F.3d 947, 950 (7th Cir. 2012); *Brown v. Sec'y of State of Fla.*, 668 F.3d 219, 226 (11th Cir. 2012); *Largess v. Supreme Judicial Ct.*, 373 F.3d 219, 226 (1st Cir. 2004); *Risser v. Thompson*, 930 F.2d 549, 552-53 (7th Cir. 1991); and *Corr v. Metro. Wash. Airports Auth.*, 800 F. Supp. 2d 743, 757-58 (E.D. Va. 2011).

[10] This is consistent with even Petitioner's assertion that Guarantee Clause claims are sometimes justiciable. *See* Pet. for Reh'g 9–12. Petitioner acknowledges that some Guarantee Clause claims can be justiciable, but then implausibly suggests that they are limited only to extreme situations "akin to a monarchy or dictatorship taking over a state." Pet. for Reh'g 11.

9

simply not true. Having determined that claims brought under the Guarantee Clause can be justiciable, the Panel followed the directive in *New York* to look to *Baker* to determine whether the political question in this case is justiciable:

> Given the clarity of [*Baker*'s] holding, we must agree . . . that the six tests identified in *Baker* are the exclusive bases for dismissing a case under the political question doctrine. Furthermore, the *Baker* Court explicitly rejected a categorical Guarantee Clause bar. . . . [T]here should be no dismissal for non-justiciability on the ground of a political question's presence absent one of the specifically identified factors.

Op. 33, 35 (internal quotation omitted).

    The Panel then applied each of *Baker*'s six tests, concluding that none bars this case. Op. 35–46. Petitioner disagrees with the Panel's conclusion, impugning the Panel's observation that, in applying the second test, there is "sparse judicial precedent interpreting the Guarantee Clause to aid," Op. 39, as a "blithe" admission, Pet. for Reh'g 14. However, as explained in *Baker*, when there is little guiding case law, there is a need for a "discriminating inquiry into the precise facts and posture of the particular case, and [an] impossibility of resolution by any semantic cataloguing." *Baker*, 369 U.S. at 217. The Panel correctly followed this precedent. *See* Op. 42.

    The Panel's affirmance of the District Court's reasoning that the political question doctrine does not bar Respondents' case is consistent with the decisions of this Circuit and those of other Circuits. The Panel cautiously read

the limits in *New York*, *Pacific States*, *Luther*, *Baker*, and other cases, interpreted them, and dutifully applied the six *Baker* tests.

Petitioner also continues to make light of Respondents' separate statutory claim under the statehood Enabling Act, 18 Stat. 474, on the pretense that it is "derivative" of Respondents' constitutional claims. Pet. for Reh'g 3, 8 n.5. In a footnote, Petitioner asserts that the Panel committed "flat error" in determining that statutory claims, such as Respondents' Enabling Act claim, are not subject to a political question analysis. *Id*. Petitioner offers no authority for his assertion that the statutory claim is rolled up with Respondents' Guarantee Clause claim simply because the Enabling Act contains language also found in the Guarantee Clause, other than unpersuasive dicta in *Pacific States*. *Id*. This assertion flies in the face of the recognized duty of federal courts to interpret and to apply federal statutes. *Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1428 (2012); *see also Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 625–27, 630 (10th Cir. 1998). Respondents' case could well proceed on the Enabling Act claim alone, just as the Enabling Act could have effected statehood without including the Guarantee Clause language. *Pacific States* did not adjudicate an Enabling Act claim and is no authority for barring such a claim. *Pac. States*, 223 U.S. at 137–51. Indeed, the political question doctrine does not apply to

11

Respondents' Enabling Act claim because it is purely statutory. *See Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 (1986).

Thus, because the Panel followed the law concerning the political question doctrine and because the Respondents' Enabling Act claim does not require an analysis of the political question doctrine, there is no basis to revisit the Panel's decision on justiciability.

## IV. CONCLUSION

Respondents respectfully request that this Court deny the Petition for the reasons set forth above.

Respectfully submitted this 7th day of May, 2014.

<u>/s/ Sarah May Mercer Clark</u>
MICHAEL F. FEELEY
GEOFFREY M. WILLIAMSON
CARRIE E. JOHNSON
SARAH MAY MERCER CLARK
Brownstein Hyatt Farber Schreck LLP
410 17th Street, Suite 2200
Denver, Colorado 80202-4437
(303) 223-1100

LINO S. LIPINSKY de ORLOV
HERBERT LAWRENCE FENSTER
DAVID E. SKAGGS
McKenna Long & Aldridge LLP
1400 Wewatta Street, Suite 700
Denver, Colorado 80202
(303) 634-4000

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing **Response In Opposition To Petition For Rehearing *En Banc*** was furnished through the ECF electronic service to the following on this the 7th day of May, 2014:

Daniel Domenico (dan.domenico@state.co.us)
Michael L. Francisco (michael.francisco@state.co.us)
Bernie Beuscher (bernie.buescher@state.co.us)
Megan Rundlet (megan.runlet@state.co.us)
David Benjamin Kopel (david@i2i.org)
Melissa Hart (melissa.hart@colorado.edu)
John M. Bowlin (john.bownlin@dgs.com)
Emily L. Droll (emily.droll@dgs.com)
Andrew M. Low (andrew.low@dgslaw.com)
D'Arcy Winston Straub (dstraub@ecenteral.com)
Ilya Shapiro (ishapiro@cato.org)
James Martin Manley (jmanley@mountainstateslegal.com)
Harold Haddon (hhaddon@hmflaw.com)
Laura Kastetter (lkastetter@hmflaw.com)
Matthew Douglas (matthew.douglas@aporter.com)
Nathaniel J. Hake (nathanial.hake@aporter.com)
Paul Rodney (paul.rodney@aporter.com)
Holly Elizabeth Sterrett (holly.sterrett@aporter.com)
Joseph Guerra (jguerra@sidley.com )
Kathleen Moriarty Mueller (kmueller@sidley.com)
Catherine Carla Engberg (engberg@smwlaw.com )
Richard A. Westfall (rwestfall@halewestfall.com )

      I further certify that all required privacy redactions have been made to the documents and that the ECF submission was scanned for viruses with the most recent version of Trend Micro Deep Security Anti-Virus software, pattern version 10.779.00, updated on May 7, 2014 which is automatically updated via the internet. According to the program, this ECF submission is free of viruses.

                                          */s/ Paulette M. Chesson*
                                          Paulette M. Chesson, Paralegal